IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00159-KDB-DCK

| | |
|---|---|
| **BRENT SHAUN HEAVNER,**<br><br>Plaintiff,<br><br>v.<br><br>**SETH WILLIAM BURNS;<br>CITY OF HICKORY, NC;<br>THURMAN WHISNANT; AND<br>HICKORY POLICE<br>DEPARTMENT,**<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 19). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion.

In this action, Plaintiff Brent Heavner alleges that Defendants police officer Seth Burns; police chief Thurman Whisnant; the City of Hickory, North Carolina; and the Hickory Police Department are liable to him under 42 U.S.C. §1983 and/or numerous North Carolina state law causes of action. All of Heavener's claims arise from injuries that occurred after he escaped from the back of Burns' moving police car following his arrest for shoplifting and then collided with Burns car in the parking lot to which Heavner fled. While the Court agrees with Heavner that a claim under Section 1983 might survive summary judgment if there was evidence from which a jury could find that a police officer used his police car as a weapon against an unarmed escaped

1

arrestee, Heavner has offered no evidence from which a jury could reasonably conclude that officer Burns consciously used his police car to hit him. Instead, the only evidence in the record is that the impact occurred accidentally, as Burns testifies. Although any unintended injury during the course of a lawful arrest is of course unfortunate, Plaintiff cannot maintain a legal claim for accidental injuries that plainly resulted from circumstances of his own making.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*, (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence

to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

On October 8, 2018, Heavner went to a Walmart located in Hickory, North Carolina from which he had been previously banned for shoplifting. (Doc. No. 1-1, ¶ 19, Doc. No. 20-4 ("Burns Affidavit"), ¶ 4). Hickory police officer Burns was dispatched to the Walmart when the manager on duty called to report that Heavner was in the store. (Burns Aff. ¶ 4). On his way to Walmart, Burns looked up Heavner in his computer system, which informed him of Heavner's previous weapons charges, drug charges and past felonies and warned Burns to approach Heavner with caution (Burns Aff. ¶ 5).

When Burns arrived at Walmart, he spoke with the manager, who pointed out Heavner. (Burns Aff. ¶ 6). Burns then talked to Heavner, who was intoxicated. (Burns Aff. ¶ 9; Doc. No. 20-3 ("Heavner Deposition") pp. 29-30). Shortly after their conversation began, Burns conducted a pat down in order to determine whether Heavner had any weapons on him (based on the information Burns had obtained about Heavner's history). (Burns Aff. ¶ 7). During the pat down, Burns found and removed a pocket knife from Heavner. (Burns Aff. ¶ 8). Burns also felt a bulge of plastic in Heavner's crotch area as well as a lump in Heavner's left sleeve, which turned out to be a pair of boxers. (*Id.*). Once Burns found the concealed merchandise, Heavner was placed in handcuffs and taken to the store's "loss prevention office." Burns testifies that out of a "concern for Heavner's well-being and comfort" he made sure the handcuffs were not too tight. (*Id.*).

In the loss prevention office, Burns further searched Heavner and found several more items, including a camera and several SD memory cards. (Burns Aff. ¶ 10). In total, Burns recovered $204.58 in hidden merchandise. (*Id.*). While in the office, Burns also reviewed a letter

4

from the Walmart store manager, dated May 11, 2018 and signed by Heavner, which banned Heavner from the Walmart. (Burns Aff. ¶ 11; Heavner dep. pp. 24, 26, Ex. 1). Based on the District Attorney's instructions to charge as felony breaking and entering suspected shoplifting from a store from which the suspect had been banned, Burns placed Heavner under arrest for that crime. (Burns Aff. ¶ 12). According to Burns, once Heavner was notified he was being charged with a felony, he became "agitated." (*Id.*).

Burns escorted Heavner out of the Walmart and placed him in the back of his patrol car with his handcuffs still on. (*Id.* ¶ 13). At some point after Burns and Heavner were in the vehicle, Burns rolled down the window for Heavner (at Burn's suggestion) because of how hot it was in the car. (*Id.* ¶ 14). Just before Burns was about to make a right turn onto 4th street SW, he heard the open-door chime go off. (*Id.* ¶ 15). Burns turned around and saw that Heavner had removed his handcuffs, reached through the window and opened the door from the outside. (*Id.*; Heavner dep. p. 38). Heavner then jumped out of the vehicle while it was travelling approximately thirty to thirty-five miles per hour. (*Id.*).

When Heavner jumped out of the vehicle, Burns' vehicle was just before the intersection. (Burns Aff. ¶ 16). Burns saw Heavner running northeast towards the southeast corner of the Purple Ribbon Thrift Store. (*Id.* ¶ 17). Burns testifies that he wanted to locate Heavner as quickly as possible because he was concerned about Heavener's well-being after jumping out of a moving vehicle while intoxicated, and because he did not know if Heavner posed a threat to the community. (*Id.* ¶ 25). Burns decided to drive around the back of the Purple Ribbon Thrift Store so that he could get off the road and regain visual contact. (*Id.* ¶¶ 17,

5

24). The parking lot behind the thrift store was the closest area where Burns could get his vehicle off the road while going in the direction he saw Heavner flee. (*Id.*).

Burns drove around the corner of the Purple Ribbon Thrift Store and saw Heavner running towards his vehicle. (*Id.* ¶ 18). Burns attempted to evade Heavner but was unable to do so. (*Id.* ¶ 26). Burns struck Heavner with the front of his car and Heavner went over the hood and fell to the ground. (*Id.* ¶ 18). Only one to two seconds elapsed from the time when Burns saw Heavner and the collision occurred. (*Id.* ¶ 27). Burns testifies that the collision was an accident and that he was not trying to hit, ram, block, or cut off Heavner. (*Id.* ¶ 26).

After hitting Heavner, Burns got out of his vehicle and saw Heavner on the ground on all fours. (*Id.* ¶ 19). He realized Heavner was injured when he would not respond to Burns' verbal commands, so he called emergency medical services. (*Id.* ¶¶ 20, 21). Other officers arrived on scene within five minutes of the collision and EMS arrived on scene within ten minutes. (*Id.* ¶ 22). Once EMS and the other officers arrived on scene, they took over care of Heavner. Burns was taken back to the Police Department to download his body camera footage (which has not been made part of the record by either party). (Burns Aff. ¶ 23).

Following the incident, Heavner was taken to Frye Regional Medical Center, where he remained until his discharge on October 11, 2018. (Doc. No. 1-1 ¶¶ 49-50). Heavner alleges that he suffered serious physical injuries to his face and head as a result of the collision. (D.E. 1-1 ¶ 45).

Heavner filed his Complaint on September 29, 2021, in North Carolina's Catawba County Superior Court and it was removed to this Court on November 11, 2021. (Do. No. 1). The Complaint alleges the following causes of action: (1) Assault and Battery; (2) Intentional Infliction

of Emotional Distress; (3) Negligent Infliction of Emotional Distress; (4) Negligent Hiring, Retention, and/or Supervision; (5) Violation of 42 U.S.C. § 1983 for Fourth Amendment and Fourteenth Amendment Violations; and (6) Punitive Damages for Malice, Gross, Wanton, Willful, and Reckless Negligence. (Doc. No. 1-1.). Following responsive pleadings and discovery, Defendants timely filed their Motion for Summary Judgment on October 20, 2022. Briefing of the motion is now complete and the motion is ripe to be decided.

## III. DISCUSSION

Heavner's core claim is that Burns used excessive and unreasonable force in pursuing him with the patrol car thereby causing Heavner injuries. Standard summary judgment rules apply to such excessive force claims. *See Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022). That is, "the Court must determine whether any material facts are genuinely disputed, i.e., is the evidence offered such that a reasonable jury might return a verdict for the non-movant." *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021); *Pritchard v. Mobley*, No. 4:20-CV-00060-M, 2022 WL 983159, at *4 (E.D.N.C. Mar. 30, 2022). However, because the alleged victim in excessive force cases may be unable to testify, the Fourth Circuit has cautioned the District Courts (in a case involving a decedent killed by deadly force but nevertheless instructive here) not to "overvalue the narrative testimony of an officer and to undervalue potentially contradictory" evidence. *Stanton*, 25 F.4th at 234. Still, our Court of Appeals is clear that this admonition ought not lead the Court to be "especially critical of officer testimony in these cases." *Id*. Rather, the

7

Court "need only apply … normal summary-judgment rules, which ask whether reasonable juries might disagree over some material factual dispute." *Id.*[1]

Simply put, there is no genuine factual dispute in this case. Heavner has failed to proffer any evidence, either testimonial or physical, that contradicts or casts any doubt on Burns' description of what happened. Thus, there is no basis on which a jury could reasonably dispute Burns' testimony that the collision was an accident for which Burns is not at fault, and Defendants[2] are therefore entitled to summary judgment on all of Plaintiff's claims.

### A. Plaintiff's Section 1983 Claims Against Burns

1. <u>Claim for False Arrest</u>

Heavner asserts claims against Burns pursuant to 42 U.S.C. § 1983 for both false arrest and excessive force under the Fourth and Fourteenth Amendments. The Section 1983 claim for false arrest, presumably based on the absence of probable cause for Burns' search and arrest, can be easily dismissed. *See* Doc. No. 1-1, ¶ 83-85. First, there was plainly probable cause for Burns'

---

[1] Plaintiff suggests that the Court cannot make judgments on "credibility" at summary judgment, and a jury could simply disbelieve Burns' account of events. However, in the absence of a material factual dispute – i.e., the existence of at least some contradictory evidence – a jury's finding that a witness was untruthful would necessarily be only speculation, which cannot properly support a finding of liability. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("the [nonmovant] must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."). Indeed, if the rule were otherwise, summary judgment could never be entered, no matter how one-sided the record.

[2] Plaintiff has sued the Hickory Police Department as a separate entity, but it is not. Rather, it is a department of the City of Hickory. Therefore, it is not separately subject to suit and summary judgment will be granted in its favor on all of Plaintiff's claims. *See Revene v. Charles Co. Commissioners*, 882 F.2d 870, 874 (4th Cir. 1989) ("'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal..."); *Moore v. City of Asheville*, 290 F. Supp.2d 664, 673 (W.D.N.C. 2003) (Asheville Police Department dismissed where it "is not a 'person' and, therefore, lacks the capacity to be sued.").

8

search and arrest of Heavner. "Probable cause exists when the facts and circumstances within an officer's knowledge – or of which he possesses reasonably trustworthy information – are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Watkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). Here, Heavner was arrested after Burns found stolen merchandise hidden in his clothes in a store he was banned from for shoplifting previously. Burns Aff. ¶¶ 10, 11; Heavner dep. Ex. 1. In fact, Heavner admitted to having taken Walmart merchandise when speaking with Burns. Heavner dep. pp. 30-31. Probable cause to arrest clearly exists where a suspect is found hiding stolen merchandise on his body and admits to stealing the merchandise. *See* Burns Aff. ¶¶ 10, 11; Heavner dep. pp. 30-31.

The initial pat down search of Heavner was also proper. Burns' decision to conduct a pat down of Heavner upon arrival at the Walmart was based upon Burns' legitimate concern that his safety or the safety of others could be endangered. Burns Aff. ¶ 7; *see United States v. Raymond,* 152 F.3d 309, 312 (4th Cir. 1998). Based upon the totality of circumstances, such a decision was reasonable considering that Burns was responding to a call where Heavner was already committing a crime by trespassing in a store he was banned from. Burns Aff. ¶ 4. In addition, Burns had information that Heavner had past weapons charges and should be approached with caution. *Id.* This evidence shows that Burns had sufficient reasonable suspicion that Heavner was involved in criminal activity and was armed, thus satisfying the standard under *United States v. Raymond.*

The subsequent search and seizure of Heavner in the loss prevention office was similarly proper. During the pat down of Heavner, Burns felt multiple bulges in Heavner's clothing and located stolen clothing from his sleeves. Burns Aff. ¶ 8. Any reasonable officer would have

9

concluded that Heavner, who was banned from the store, had committed a crime once stolen merchandise was located on him.

Finally, in his response, Plaintiff did not even challenge Defendants' arguments on this issue, thereby waiving any argument against the Court granting summary judgment to Defendant Burns on this claim. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [his] claim.").

### 2. Claim for Excessive Force Against Burns

Plaintiff focuses his attention on his allegation that Burns violated his Fourth Amendment rights because Burns used excessive force during the incident on October 8, 2018. Doc. No. 1-1, ¶¶ 94-96. Recently, in *Stanton v. Elliott*, our Court of Appeals described the governing law governing excessive force claims:

> Stanton brings an excessive-force claim under the Fourth Amendment. In such cases, we use an objective reasonableness test to determine whether excessive force was used. *Elliott v. Leavitt*, 99 F.3d 640, 642–43 (4th Cir. 1996) (first citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); and then *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). When *deadly* force is used, we have a more specific test for objective reasonableness. In those cases, we consider whether the hypothetical reasonable officer in that situation would have had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (quoting *Garner*, 471 U.S. at 11, 105 S.Ct. 1694). That determination must focus on the moment that deadly force was used, not the whole episode. *Elliott*, 99 F.3d at 643. And the justification for deadly force can fall away in seconds. *Waterman*, 393 F.3d at 481. In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment. *Elliott*, 99 F.3d at 642.

*Stanton*, 25 F.4th at 233 (emphasis in original).

Even accepting, without deciding, that Burns' patrol car's impact on Heavner constitutes the use of "deadly" force, the record cannot support a finding that Burns' conduct was not objectively reasonable. Most importantly, the only evidence in the record is that the collision of Burns' patrol car with Heavner was accidental. *See* Burns Aff. ¶ 26. Burns testifies that he had no intention of hitting Heavner with his car and was not even trying to block his path. *Id*. Instead, Burns was trying to regain visual contact of Heavner and get his vehicle out of the road when he decided to drive around the building, only to be surprised by Heavner running at him. Burns Aff. ¶ 18. Critically, Heavner has put forward neither testimonial nor physical evidence that in any way contradicts Burns' testimony.

Liability for accidental harm is beneath the threshold of constitutional due process. *See County of Sacramento v. Lewis,* 523 U.S. 833, 849; *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) ("Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim."); *Daniels v. Williams,* 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property"). Because there is no evidence Burns purposefully or even recklessly tried to strike Heavner and Burns' purpose of driving behind the building was to regain visual contact and get his vehicle off the street there are no grounds on which a finding that Burns' conduct was not

11

objectively reasonable could be made. Therefore, Burns[3] is entitled to summary judgment on Heavner's excessive force claim.[4]

### B. Plaintiff's Section 1983 Claims Against Whisnant and The City of Hickory

Plaintiff also seeks to assert Section 1983 claims against Chief Whisnant in his official capacity and against the City of Hickory under multiple theories including respondeat superior, a *Monell* theory of purported unlawful policy, custom or usage, and supervisory liability for failure to adequately supervise and train officers. Doc. No. 1-1, ¶¶ 86-91, 97-103. Because Burns is not liable in his individual capacity on Plaintiff's Fourth and Fourteenth Amendment claims, there can be no vicarious Section 1983 liability for Chief Whisnant or the City of Hickory as to any of Plaintiff's theories. *See, e.g., Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir. 1996).

Moreover, Plaintiff has failed to show any basis for liability under *Monell*. In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States held that a municipality may not be held liable pursuant to §1983 based upon the doctrine of *respondeat superior*. Pursuant to *Monell,* a plaintiff must allege and establish the existence of an official policy in one of the four following ways: (1) by establishing the existence of a policy which was formally made by the local governmental body; (2) by establishing that a policy was made by the acts and decisions of high ranking officials with final decision making authority; (3)

---

[3] Plaintiff does not make any allegation nor is there any evidence that Defendant Whisnant in his individual capacity was involved in the accident in any way. Therefore, summary judgment on the individual capacity claims against Defendant Whisnant will also be granted.

[4] Having determined that Defendants have not violated any of Heavner's constitutional rights, the Court need not separately analyze their defense of qualified immunity. The initial "threshold question" on a qualified immunity defense is whether "the facts alleged show that [the public official's] conduct violated a constitutional right." *Bennett v. Monette*, 507 F. Supp. 2d 514, 520-21 (E.D.N.C. 2007) (quoting *Saucier v. Katz,* 533 U.S. 194, 200 (2001)). If the answer is no, then "no further inquiry is required." *Id.*

by establishing the existence of a persistent and well-settled custom sufficient to constitute a *defacto* policy; and (4) by establishing the existence of a deliberate indifference by the governmental body to supervise and train its employees. *City of St. Louis v. Praprotnik*, 108 S.Ct. 915 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Fayetteville v. Spell*, 44 U.S. 1027, 108 S. Ct. 752, 98 L.Ed.2d 765 (1988). Significantly, Plaintiff has not pointed to an official custom or policy that allegedly violated Plaintiff's constitutional rights. Indeed, Heavner *relies* on city policies that he alleges protect him in his claims against Burns. Further, there is no evidence to support a claim based on a deliberate failure to train or supervise Burns. Therefore, Heavner's Section 1983 claims against Chief Whisnant and the City of Hickory fail as a matter of law and will be dismissed.

### C. Plaintiff's Remaining Claims

Plaintiff's remaining claims are Assault and Battery, Intentional and Negligent Infliction of Emotional Distress, Negligent Hiring, Retention, and/or Supervision and Punitive Damages. Doc. No. 1-1. Defendants are entitled to summary judgment on each claim.

#### 1. Assault and Battery

Plaintiff's claims for assault and battery are governed by the same law as his federal claim under the Fourth Amendment. *Njang v. Montgomery Cnty., Maryland*, 279 F. App'x 209, 216 (4th Cir. 2008) ("The jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence."). Thus, state law tort claims that are premised on an officer's use of force which is found to be reasonable and not excessive under the circumstances are not actionable under North Carolina law. *See Glenn-Robinson v. Acker*, 140 N.C. App. 606, 625 (2000); *Bell v. Dawson*, 144 F. Supp.2d 454, 464 (W.D.N.C. 2001); *Wilcoxson*

13

*v. Painter*, 2016 WL 866327, *10 (E.D.N.C. March 3, 2016) ( "[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state law tort claims."). As discussed above, Burns' objectively reasonable use of force defeats Plaintiff's Fourth Amendment excessive force claims; accordingly, Plaintiff's claims for assault and battery fail as well.

> 2. <u>Intentional and Negligent Infliction of Emotional Distress</u>

Defendants are also entitled to summary judgment with respect to Plaintiff's claims of intentional and negligent infliction of emotional distress. Under North Carolina law, the elements for negligent infliction of emotional distress are "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause plaintiff severe emotional distress ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 487-88, 340 S.E.2d 116, 119, *disc. review denied,* 317 N.C. 334, 346 S.E.2d 140 (1986).

Even if Heavner had established any of the Defendants were negligent (which he has not done as discussed above), he has failed to establish that it was "reasonably foreseeable" that "severe emotional distress" might result from the Defendant's alleged wrongful conduct. *See Johnson*, 327 N.C. at 304. While its full bounds are perhaps uncertain, North Carolina courts clearly limit the scope of "reasonable foreseeability" in the context of emotional distress claims to truly egregious and heart wrenching circumstances likely to cause

14

severe emotional distress[5] such as the stillborn death of a fetus as a result of medical negligence, the death of a two-year-old child shot with a shotgun at a home daycare or negligence occurring at the gravesite of the plaintiff's just-buried wife. *See Id.* (fetal death); *Newman*, 852 S.E.2d at 107 (daycare shooting); *Matthews v. Forrest*, 235 N.C. 281, 69 S.E.2d 553 (1952) (gravesite negligence). Indeed, even in cases involving a mother witnessing unsuccessful attempts to resuscitate her son after a car accident and parents grieving after their son was negligently overserved alcohol and died in a car accident driving home, the North Carolina Supreme Court has concluded that the plaintiff's alleged emotional distress was not reasonably foreseeable. *See Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 334 N.C. 669, 435 S.E.2d 320 (1993); *Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d 324 (1993) ("While anyone should foresee that virtually any parent will suffer *some* emotional distress—'temporary disappointment ... or regret'—in the [death of a child], to establish a claim for NIED the law requires reasonable foresight of an emotional or mental disorder or other severe and disabling emotional or mental condition." (emphasis in original)). *See also*, *Sanders v. Duke Energy Carolinas, LLC*, No. 320CV00215KDBDSC, 2022 WL 282567, at *3 (W.D.N.C. Jan. 31, 2022) (granting motion to dismiss claim for negligent infliction of emotional distress as a result of flooding of personal residence).

---

[5] The "term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (emphasis in original) (quoting *Johnson*, 327 N.C. at 304). This is a "high standard," and "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Waddle*, 331 N.C. at 83-84, 414 S.E.2d at 27-28 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)) (emphasis omitted).

15

The circumstances of Plaintiff's injury do not rise to the level that the North Carolina courts have found make a plaintiff's alleged "severe emotional distress" "reasonably foreseeable." While it is of course foreseeable that a collision with a car might lead to physical injury, it does not follow that it will lead to emotional distress sufficient to meet the high bar for Plaintiff's claims under North Carolina law. Also, Heavner testifies he has not been treated for any mental or emotional condition since October of 2018, when the accident occurred. Heavner dep. p. 77. Therefore, Heavner has neither shown he suffered from severe emotional distress (as defined by North Carolina law) or that any mental distress he has suffered is causally connected with Burns' conduct. Accordingly, summary judgment will be entered for Defendants on Plaintiff's claims for negligent and intentional infliction of emotional distress.

### 3. Negligent Hiring, Retention and/or Supervision

Plaintiff also seeks to assert a claim for negligent hiring, retention, and/or supervision against the City and Chief Thurman Whisnant ("Whisnant") Doc. No. 1-1, ¶¶ 76-78. Nothing in the record suggests that Burns was not a qualified officer or that he should have been terminated prior to the incident for any reason. Similarly, nothing in the evidence of record suggests that the City or Whisnant were negligent in any way in their hiring, retention, and/or supervision of Burns. And, as with many of his other theories of liability, Heavner failed to substantively pursue / support this claim in his response (beyond simply saying that officer Burns' alleged violation of the City's policies itself establishes that Burns' hiring, retention and/or supervision was wrongful) thereby waiving any argument against summary judgment being granted to Defendant Burns on this claim. *See Ferdinand-Davenport,* 742 F.Supp.2d at 777.

16

4. <u>Punitive Damages</u>

Finally, Heavner's "claim" for punitive damages cannot survive summary judgment. Although pled as a separate cause of action, Plaintiff's allegations make clear that his claim for punitive damages is only a request for additional relief on his claims under Section 1983 and North Carolina law. Having already determined that Defendants are entitled to summary judgment on Heavener's "underlying" claims, Defendants are also entitled to summary judgment on any claim for punitive damages related to those claims. More specifically, there is no evidence in the record from which a jury could conclude that Burns or any of the other Defendants acted with "malice"[6] or otherwise engaged in willful, wanton, or grossly negligent conduct. Therefore, Plaintiff's claim for punitive damages also fails.

---

[6] Moreover, in the absence of malice, Burns and Whisnant are entitled to public official immunity. Public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions in the absence of malice or corruption. *See Price v. Davis*, 132 N.C. App. 556, 562, 512 S.E.2d 783, 787 (1999) (citation omitted); *Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. No. 19) is **GRANTED**; and

2. The Clerk is directed to close this matter in accordance with this Order.

   **SO ORDERED ADJUDGED AND DECREED**.

Signed: December 5, 2022

Kenneth D. Bell
United States District Judge

18